■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAVID GAINES, Appellant. — Appeal by defendant from a judgment of the County Court, Westchester County (Leggett, J.), rendered April 17, 1980, convicting him of robbery in the first degree, robbery in the second degree, and grand larceny in the third degree, upon a jury verdict, and imposing sentence. Judgment reversed, on the law, and indictment dismissed. The case is remitted to the County Court, Westchester County, for the purpose of entering an order in its discretion pursuant to CPL 160.50. On the evening of December 18, 1978, Officer Raymond Nagle responded to a call regarding a burglar alarm at 9 Cromwell Place in White Plains. He believed, in error, that the call covered 4 Cromwell Place, and when he arrived, he noticed a red Dodge Charger parked in front of the house at that address. The car was occupied by one black male; two other black males were walking away from the vehicle and in the officer's direction. When the two men saw the approach of Nagle's radio car, they turned and began walking in the other direction. Suspecting them of involvement in the reported burglary, Nagle pulled his car diagonally across theirs to block a possible escape. He noted the license of the car and radioed it to police headquarters for a registration check. The officer soon realized, however, that the burglar alarm was sounding at 9 Cromwell Place, further down the street, and he moved his car forward, allowing the men to drive away. Approximately one-half hour after this incident, two black men perpetrated a robbery at a nearby gas station. They handcuffed the attendant to a car and put tape over his eyes. He subsequently heard the sound of a car door closing and the car driving away. One of the officers who responded to the robbery call was Patrolman Nagle. He told fellow officers about his earlier confrontation on Cromwell Place, and the police subsequently traced the Dodge Charger Nagle had seen to one Wyett Woodbury. Woodbury ultimately confessed to his participation in the gas station robbery, telling the police that he had driven

the car and that the robbery itself had been carried out by his two companions, Warren Harry and the defendant, David Gaines. On the basis of information provided by Woodbury, the defendant was arrested. He admitted that he knew Harry and, after initial denials, acknowledged that he knew Woodbury as well. Nevertheless, he repeatedly denied participation in the gas station robbery and denied further that he had ever been in Woodbury's car. He claimed that he had not been in White Plains since attending school there years before. At the defendant's trial, the gas station attendant testified that he could not identify the perpetrators of the robbery. However, in return for a promise of a sentence of probation, Wyett Woodbury appeared for the prosecution and identified the defendant as one of the participants in the crime. The only other identification evidence offered by the People was the testimony of Officer Nagle that the defendant and Harry were the two men he had seen walking on Cromwell Place a half hour before the crime. The jury convicted the defendant of the robbery. We are now constrained to reverse on the ground that the evidence adduced at trial was legally insufficient to corroborate the testimony of Woodbury, who concededly was an accomplice as a matter of law. In *People v Hudson* (51 NY2d 233, 238-239), the Court of Appeals, reviewing the law of accomplice corroboration, observed: "The mandate of the statute is that there shall be evidence, in addition to that furnished by the accomplice, 'tending to connect the defendant with the commission' of the crime. And the role of the additional evidence is only to connect the defendant with the commisson of the crime, not to prove that he committed it. The accomplice testimony, if credited by the jury, may serve the latter purpose, provided that there is other proof to satisfy the 'tending-to-connect' requirement. In the present case our attention is focused on the sufficiency of the nonaccomplice evidence. To meet the statutory mandate the corroborative evidence must be truly independent; reliance may not to any extent be placed on testimony of the accomplice for to do so would be to rely on a bootstrap. 'The *independent* evidence must be material evidence *other* than that of the accomplice and must fairly and reasonably *tend to connect the defendant with the commission of the crime* * * * It may not depend for its weight and probative value upon the testimony of the accomplice' (*People v Kress,* 284 NY 452, 460; emphasis in original). If there is such independent evidence of connection, that evidence will serve to lend support to the testimony of the accomplice that the defendant was involved in the criminal transaction. It will counter any inference that the accomplice, without warrant, sought for reasons of his own to implicate the defendant — the risk to which the statute is addressed. The objective of the statute is not to require bolstering of the testimony of the accomplice as a witness or to lend credibility to the details of his testimony; rather the purpose of the statute is to protect the defendant against the risk of a motivated fabrication, to insist on proof other than that alone which originates from a possibly unreliable or self-interested accomplice (*People v Daniels,* 37 NY2d 624). It is for this reason that the so-called corroborative evidence must stand on its own. To permit the testimony of the accomplice himself to import meaning or significance into the independent proof would furnish no assurance that the independent proof was not itself subject to the very untrustworthiness against which the statute seeks to protect." To corroborate the accomplice's testimony in the case at bar, the People relied on Officer Nagle's independent observation of the defendant with Woodbury and Harry near the scene of the crime one-half hour before its commission. But such evidence necessarily depends for its probative value upon a showing that Woodbury and Harry had in fact participated in the robbery. The only evidence that either of them had been a participant in the crime, however, was the testimony of Woodbury

himself. (Harry pleaded guilty and did not testify.) There was no other evidence linking Woodbury or Harry to the crime since the gas station attendant was unable to make any identification. Similarly, the defendant's allegedly false denials of his presence in White Plains are ,without probative weight in the absence of independent evidence that his companions had committed the robbery at the gas station. Thus the corroborative evidence relied on by the prosecution has no meaning or significance without reference to the accomplice's testimony. It therefore cannot suffice as *independent* evidence tending to connect the defendant with the commission of the crime. Mollen, P. J., Lazer, Mangano and Niehoff, JJ., concur.